IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RICK MILTEER,                    §
                                 §
                    Plaintiff,   §
                                 §    Civil Action No. 3:21-CV-2941-D
VS.                              §
                                 §
NAVARRO COUNTY, TEXAS,           §
                                 §
                    Defendant.   §

MEMORANDUM OPINION
AND ORDER

This is a suit by plaintiff Rick Milteer ("Milteer") against defendant Navarro County, Texas ("Navarro County"), alleging claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*.; the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794; and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code Ann. § 21.001 *et seq*. (West 2015).  Navarro County moves under Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a claim on which relief can be granted.  For the reasons that follow, the court grants Navarro County's motion to dismiss, but also grants Milteer leave to replead.

I

Milteer is a practicing Messianic Jew, was a member of the United States Army (from which he was honorably discharged), and is a disabled veteran suffering from Post Traumatic

Stress Disorder ("PTSD") and hearing loss.[1]  Navarro County hired Milteer in 2013 to work within its Texoma High Intensity Drug Trafficking Areas ("HIDTA") division as an Information Technology ("IT") manager.  During Milteer's employment, he was the only IT Manager within the Texoma HIDTA department.  Milteer's direct report was the Texoma HIDTA director, Lance Sumpter ("Sumpter").

Around May 2020, during the COVID-19 pandemic, Milteer underwent invasive surgery on his throat.  Per Navarro County policy, he entered on the Texoma HIDTA office calendar the time he had taken off for his surgery and recovery, noting the time as sick time.  On or around May 20, 2020 Sumpter contacted Milteer (during time Milteer had reported as sick), which made Milteer feel forced to share with Sumpter that he had undergone surgery.  Although Milteer was uncomfortable sharing the details of his surgery, he did inform Sumpter that he was currently in remission and that he had a disability connected with his prior military service that made it difficult for him to hear.  Milteer also informed Sumpter that his doctor would allow him to return to work on May 25, 2020.  Sumpter responded that he would require his employees to work in the office two to three days per week.  When Milteer asked for a reasonable accommodation that would permit him to work remotely because of the COVID-19 pandemic, his hearing disability, and his recent invasive medical surgery that would require significant recovery, Sumpter denied Milteer's request for

---

[1]In deciding Navarro County's Rule 12(b)(6) motion, the court construes the complaint in the light most favorable to Milteer, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Milteer's favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004); *see also infra* § II.

accommodation and time off.

Following his conversation with Sumpter, Milteer returned to work and also traveled out of town when directed.  Although other employees were allowed to work from home and only sporadically show up at the office, Milteer was required to work in the office two to three days per week.  In early Fall 2020, Milteer made specific requests to work remotely, but Sumpter denied these requests and required that Milteer travel to Amarillo for work projects on August 3-7, 2020 and September 6-8, 2020.  Sumpter never afforded Milteer the same right to work remotely as all other employees had.

On October 7, 2020 Sumpter began to require Milteer to work in the office four days per week, even though all other employees were allowed to continue to work from home.  Milteer again asked for an accommodation and to be permitted to work remotely, but Sumpter denied the request.

On October 17, 2020 a data breach and intrusion was discovered.  Milteer proceeded to fix the breach in accordance with policy guidelines.  On October 22, 2020 Milteer emailed Julie Wright ("Wright"), the Human Resources Coordinator of Navarro County, to discuss sensitive matters transpiring at the Texoma HIDTA.  Milteer also wanted to clarify who his employer was so that he could report employment-related issues.  Milteer met with Wright on October 26, 2020.  During the meeting, Wright informed Milteer that she did not know who his employer was, but that she would follow up the next day.  Milteer never heard back from Wright.

On October 28, 2020 Milteer reported the data breach and intrusion to Sumpter and

- 3 -

the Deputy Director, Keith Raymond Brown ("Brown").  The following day, Sumpter suspended Milteer and removed his remote access, disconnected him from all of the Texoma HIDTA servers, blocked his email access, and prohibited him from going into his office.  On November 4, 2020 Milteer met with Sumpter and Brown to discuss the October 17, 2020 data breach and intrusion.  Milteer had been privately fasting and praying, and, as is customary during such a period, had won his Tallit and Kippah to the November 4, 2020 meeting.  He alleges that, during the meeting, he was immediately questioned about his appearance, and that, after he informed Sumpter that he is an observant Messianic Jewish believer, Sumpter told him to remove his Tallit and Kippah because Sumpter thought it was disrespectful for the type of meeting Sumpter was conducting.  Milteer declined.

The following day, Milteer provided a written data breach and intrusion report.  He and his wife then met with Wright to report Milteer's allegations of discrimination, including the lack of adequate accommodation, "sexual orientation and derogatory marks," retaliation, and harassment.  Compl. ¶ 5.20.  On November 23, 2020 Milteer filed a complaint with the Equal Employment Opportunity Commission ("EEOC").

On November 30, 2020 Milteer filed an affidavit and an identity theft report with the Navarro County Sheriff.  He also provided the same to Navarro County Commissioners Court Judge Davenport, the Navarro County District Attorney's Office, and Wright.

On December 28, 2020 Milteer's employment was terminated.  Wright stated in a letter: "this letter is to inform you that as of today, Dec. 28, 2020, we are terminating your employment with Navarro County.  Your employment is at-will, which allows the County

- 4 -

to end the employer-employee relationship without notice and without reason." *Id.* ¶ 5.24. Prior to the December 28, 2020 letter, Milteer had never had any employment-related issues or had any verbal or written warnings in his nearly eight years of employment with Navarro County.

After Milteer received his right to sue letter from the EEOC, he filed the instant lawsuit against Navarro County.[2]  He alleges claims under Title VII for disability discrimination, religious discrimination, and retaliation, and under the TCHRA for discrimination, retaliation, and wrongful discharge.[3]  Navarro County moves to dismiss this action under Rule 12(b)(6).  Milteer opposes the motion, which the court is deciding on the briefs.

---

[2]Milteer filed his "original complaint" on November 23, 2021.  He then filed, on January 20, 2022, another document captioned as an "original complaint."  The January 20, 2022 filing appears to be a duplicate of the November 23, 2021 complaint, but the case docket reflects that it is an "(amended) complaint."  ECF No. 6.  Because the two documents appear to be the same, the court will refer to the pleading that Milteer is being given leave to file as an "amended complaint" rather than as a second amended complaint.  *See infra* § VI.

[3]In the first paragraph of his complaint, Milteer alleges:

> This is a proceeding for civil enforcement of lawful rights secured by [Title VII], prohibiting certain unlawful employment practices such as Religious Discrimination, Workplace Retaliation, and Disability discrimination pursuant to the [ADA] and [the Rehabilitation Act], punitive damages for the intentional violations, and state law claims of discrimination, retaliation and wrongful discharge pursuant to the Texas Labor Code.

Compl. ¶ 1.1.  Milteer only pleads claims, however, under Title VII and the TCHRA.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive Navarro County's motion to dismiss, Milteer must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

III

The court begins with Milteer's claims under Title VII and the TCHRA for discrimination based on religion.

A

Under Title VII,[4] it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of . . . religion[.]" 42 U.S.C. § 2000e-2. When a plaintiff does not present direct evidence of discrimination, the court analyzes the claim using the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[5] Under this

_____

[4]"[T]he law governing claims under the TCHRA and Title VII is identical." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999) (citation omitted).

[5]The familiar *McDonnell Douglas* standard for evaluating employment discrimination claims is an evidentiary framework, not a pleading standard. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Accordingly, "a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz*, 534 U.S. at 510-12); *see also, e.g.*, *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) ("Although Chhim did not have to submit evidence to establish a prima facie case of discrimination at this stage, he had to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible."). To survive Navarro County's motion to dismiss, however, Milteer must plausibly allege the ultimate elements of his Title VII claim. *See Chhim*, 836 F.3d at 370. And since *McDonnell Douglas* will govern when a plaintiff relies on indirect evidence of discrimination, it can be helpful to reference that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of his claim. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (Title VII case) ("If a plaintiff's . . . claim depends on circumstantial evidence, he will 'ultimately have to show' that he can satisfy the *McDonnell Douglas* framework. In such cases, we have said that it can be 'helpful to reference' that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements

- 7 -

framework, the plaintiff must establish a prima facie case of discrimination by showing that he (1) held a bona fide religious belief, (2) his belief conflicted with a requirement of his employment, (3) his employer was informed of his belief, and (4) he suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013) (citing *Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 499 n.9 (5th Cir. 2001)).[6]

B

Navarro County moves to dismiss Milteer's Title VII and TCHRA religious discrimination claims on the ground that he has failed to adequately plead that his religious beliefs were a motivating factor for any adverse employment action.[7]  It contends that Milteer's only allegations in this regard are that he wore a Tallit and Kippah to a meeting with Sumpter, that Sumpter asked if he was Jewish and to remove the Tallit and Kippah, and that Milteer refused to do so; that Milteer does not specifically allege that any adverse employment action was brought about because of his religious beliefs; and that, accordingly,

---

of the . . . claim." (quoting *Chhim*, 836 F.3d at 470-71)).

[6]These are the required elements for a religious discrimination claim based on the allegation that an employer failed to accommodate its employee's religious belief.  Milteer appears to agree that he must satisfy these elements to prevail on his religious discrimination claims.  *See* P. Br. 9.

[7]Navarro County also moves to dismiss Milteer's religious discrimination claims on the ground that he has failed to adequately plead that he was treated differently from other similarly situated employees.  But as Milteer correctly points out in his response, he is not required to establish as an element of his religious discrimination claim that similarly situated employees were treated differently.  *See Tagore*, 735 F.3d at 329 (citing *Bruff*, 244 F.3d at 499 n.9).

Milteer has failed to adequately plead a religious discrimination claim under either Title VII or the TCHRA.

Milteer responds that he has set forth sufficient facts to support each element of his Title VII claim, including that "it was more than a sheer possibility that he was fired due to his religious practices."  P. Br. 11.

Navarro County argues in its reply that Milteer does not allege that any specific religious belief he held conflicted with an employment requirement, that he advised Navarro County of such a conflict, or that Navarro County thereafter took adverse action against him because he refused to comply with any conflicting employment requirement.[8]

C

Milteer's discrimination theory appears to be that he was terminated, at least in part, for his religious practices.  As alleged in his complaint, these religious practices are confined to his wearing a Tallit and Kippah during a November 4, 2020 meeting with Sumpter and Brown and refusing Sumpter's request that he remove the Tallit and Kippah during the meeting.  But Milteer's complaint does not plausibly plead that Navarro County terminated his employment because of these religious practices.  Other than alleging that the fact that his employment was terminated, the complaint pleads only the following regarding his

_____

[8]To the extent that Navarro County argues that Milteer has failed to plausibly allege facts in support of the first, second, or third elements of his prima facie case, the court declines to consider these arguments, which have been raised for the first time in Navarro County's reply.  *See, e.g., Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) ("[T]he court will not consider an argument raised for the first time in a reply brief." (citation omitted)), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

termination:

> On December 28, 2020, Plaintiff's employment was terminated. [Wright] stated in a letter dated Dec. 28, 2020 "this letter is to inform you that as of today, Dec. 28, 2020, we are terminating your employment with Navarro County.  Your employment is at-will, which allows the County to end the employer-employee relationship without notice and without reason."

Compl. ¶ 5.24.  The complaint does not plead any unlawful reason for his termination, much less that it was based on his religious practices, particularly his wearing, and refusing to remove, his Tallit and Kippah during the November 4, 2020 meeting with Sumpter and Brown.

Accordingly, because the allegations of the complaint do not enable the court to draw the reasonable inference that Milteer was terminated or otherwise suffered an adverse employment action "due to his religious practices," P. Br. 11, the court grants Navarro County's motion to dismiss Milteer's Title VII and TCHRA religious discrimination claims.

IV

The court next considers Milteer's claims for disability discrimination under the ADA, the Rehabilitation Act, and the TCHRA.[9]

---

[9]To the extent that Milteer attempts to bring a Title VII claim for disability discrimination, *see* Compl. ¶ 6.1 (alleging claim under Title VII for, *inter alia*, "[d]iscrimination based on [d]isability"), the court dismisses this claim because Title VII does not prohibit discrimination on the basis of disability.

- 10 -

A

Navarro County moves to dismiss Milteer's disability discrimination claims on the grounds that Milteer has failed to adequately plead that he was treated differently from other similarly-situated employees; he has failed to plausibly allege that his disability was a motivating factor for any alleged adverse employment action by Navarro County; and he has failed to adequately plead that he suffered from a "disability" that substantially limits one or more life activities, instead only generally referring to his being afflicted with PTSD and hearing loss, with no further elaboration on the nature and extent of those conditions nor their effect on his everyday life activities.[10]   Navarro County also moves to dismiss Milteer's Rehabilitation Act claim on the ground that he has failed to specifically or sufficiently allege that Navarro County is a program or activity receiving federal financial assistance, as the statute requires.

Milteer responds, *inter alia*, that he has adequately pleaded that he has a disability because he has alleged that he was honorably discharged and has since been diagnosed with

---

[10]The first two grounds of Navarro County's motion to dismiss are directed to a claim for disability discrimination, not a claim for failure to accommodate. *See, e.g.*, *Bennett v. Dall. Indep. Sch. Dist.*, 936 F.Supp.2d 767, 776 (N.D. Tex. 2013) (Fitzwater, C.J.) ("To establish a prima facie case of discrimination based on a disability under the ADA, Bennett must show that (1) he suffers from a disability or is regarded as disabled; (2) he is qualified for the job despite the disability; (3) he was subjected to an adverse employment action due to his disability; and (4) he was replaced by a non-disabled person or treated less favorably than nondisabled employees." (citing *Milton v. Tex. Dep't of Crim. Justice*, 707 F.3d 570, 573 (5th Cir. 2013)).  Milteer clarifies in his response brief that he is only pursuing a claim under the ADA for failure to accommodate, not for disability discrimination.  *See* P. Br. 12, 14.

PTSD and hearing loss as a disabled veteran; he has a service-connected disability making it difficult for him to hear; and he underwent surgery in May 2020.  He also contends that he requested a reasonable accommodation to work remotely like the other employees because he had a high risk for contracting COVID-19 because of his age and health.

B

The ADA prohibits discrimination in employment against a qualified individual on the basis of his disability.  *See* 42 U.S.C. § 12112(a).  Under the ADA, to "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  *Id*. § 12112(b)(5)(A).  Similarly, the TCHRA provides that it is unlawful for an employer "to fail or refuse to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability . . . unless [the employer] demonstrates that the accommodation would impose an undue hardship on the operation of the business."  Tex. Lab. Code Ann. § 21.128(a).

To prevail on an ADA failure-to-accommodate claim, *see supra* note 10 (clarifying that Milteer is only pursuing a claim under the ADA for failure to accommodate, not for disability discrimination), a plaintiff must show that: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations

for such known limitations." *Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (footnote and internal quotation marks omitted). "These elements also apply to [Milteer]'s Rehabilitation Act claim[.]" *Jin Choi v. Univ. of Tex. Heath Sci. Ctr. at San Antonio*, 633 Fed. Appx. 214, 215 (5th Cir. 2015) (per curiam) (citation omitted) (adapting the failure-to-accommodate standard from Title I to Title II).[11]  Under the TCHRA, to establish a claim "based on an employer's failure to provide a reasonable accommodation, the plaintiff must show: (1) [he] is an individual with a disability; (2) the employer had notice of the disability; (3) with reasonable accommodations [he] could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Tex. Dep't of State Health Servs. v. Rockwood*, 468 S.W.3d 147, 154-55 (Tex. App. 2015, no pet.).

## C

For purposes of his ADA, Rehabilitation Act, and TCHRA claims, Milteer has failed to plausibly plead that he has a "disability." The ADA defines "disability" as (a) a physical or mental impairment that substantially limits one or more major life activities, (b) a record of such an impairment, or (c) being regarded as having such an impairment. 42 U.S.C.

---

[11]"The remedies, procedures, and rights available under the Rehabilitation Act parallel those available under the ADA." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020) (citation omitted); *see also Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002) ("The language in the ADA generally tracks the language set forth in the [Rehabilitation Act].  In fact, the ADA expressly provides that '[t]he remedies, procedures and rights' available under the [Rehabilitation Act] are also accessible under the ADA.  Thus, '[j]urisprudence interpreting either section is applicable to both.'" (citations omitted)).

§ 12102(1); *see also* Tex. Lab. Code Ann. § 21.002(6) (defining "disability" to mean "a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment."). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). The ADA Amendments Act of 2008 ("ADAAA"), provides, among other things, that the term "substantially limits" is to be interpreted as broadly as possible. *Id*. § 12102(4)(A)-(B).

"Therefore, in order to adequately allege a disability under the ADA, a plaintiff must plead facts giving rise to an inference that his or her impairment 'substantially limits one or more "major life activities."'" *Luedecke v. Tenet Healthcare Corp.*, 2015 WL 58733, at *5 (N.D. Tex. Jan. 5, 2015) (Boyle, J.) (quoting *Hale v. King*, 642 F.3d 492, 500-01 (5th Cir. 2011)). In *Hale* the Fifth Circuit considered a plaintiff's claim that he had been discriminated against based on his disabilities, which he described as "chronic back pain, chronic Hepatitis-C, and psychiatric condition." *Id.* at 500. Although the plaintiff attached to his complaint medical records demonstrating that he suffered from these ailments, the court held that they were insufficient to support an ADA claim because they "did not contain facts regarding the impact of [his] ailments on his ability to perform major life activities." *Id*. at 500-01. Based on the failure to allege the impact of his medical issues on his ability to perform major life activities, the court held that the plaintiff "failed to state a claim for

- 14 -

relief" under the ADA. *Id.* at 501;[12] *see also Mora v. Univ. of Tex. Sw. Med. Ctr.*, 469 Fed. Appx. 295, 297 (5th Cir. 2012) (per curiam) (holding that plaintiff failed to state a claim under the ADA where she alleged a disability and stated that it impaired a major life activity, but did not specify which of her life activities was substantially limited); *Luedecke*, 2015 WL 58733, at *6 (dismissing ADA claim where plaintiff alleged that he "ha[d] a disability within the meaning of the ADA as amended by the ADAAA and his 'chronic pain related to disc disease of the neck' substantially limit[ed] his major life activities," but neither specified what "major life activities" were limited nor presented any facts describing the difficulties he experiences in performing any activities).

The court will assume *arguendo* that Milteer's medical conditions are physical or mental impairments under the ADA. Even so, Milteer has failed to allege that his conditions substantially limited him in the performance of a major life activity. Milteer pleads that he "was honorably discharged [from the Army] and has since suffered from P.T.S.D. and hearing loss as a disabled veteran," Compl. ¶ 5.1; that he informed Sumpter that "he was currently in remission and that he had a military service-connected disability making it difficult for him to hear," *id.* ¶ 5.6; and that he

---

[12]The Fifth Circuit in *Hale* applied the ADA's definition of "disability," as opposed to the ADAAA's expanded definition that applies to the present case. *Hale*, 642 F.3d at 499. But this does not affect the court's analysis of the need to allege facts that explain how an ailment limits a major life activity. Consequently, the court's reasoning is applicable here.

> asked for reasonable accommodation that would permit him to work remote like the other employees and staff of Navarro County, especially in light of the COVID-19 pandemic which was spreading rapidly outside as well as within Defendant's place of employment; as well as Plaintiff's hearing disability caused during his time in the military; and due to his recent invasive medical surgery that would require significant recovery[.]

*Id.* ¶ 5.7.  But he does not allege any specific major life activity that is "substantially limited" by his physical or mental impairments.  "[T]o be substantially limited means to be unable to perform a major life activity that the average person in the general population can perform, or to be significantly restricted in the ability to perform it." *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 614 (5th Cir. 2009) (citing 29 C.F.R. § 1630.2(j)).  "In making that determination, the EEOC has advised that [the court] consider: (i) the nature and severity of the impairment[;] (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Hale*, 642 F.3d at 500 (internal quotation marks omitted) (quoting *Chevron Phillips Chem. Co.*, 570 F.3d at 614).  In this case, Milteer's complaint does not include any allegations that describe the nature or severity of his physical and mental impairments or the difficulties he experiences as a result of these impairments in performing major life activities.  The conclusory allegations that Milteer suffered from PTSD and hearing loss and that his hearing loss makes it "difficult for him to hear," Compl. ¶ 5.6, are insufficient, without more, to plausibly allege that he has a "disability," as that term is used in the relevant statutes.  Accordingly, the court grants Navarro County's motion to dismiss

Milteer's claims for failure to accommodate his disabilities.[13]

V

Finally, the court turns to Milteer's retaliation claim, which the court assumes he intends to bring under the ADA, the Rehabilitation Act, and the TCHRA.[14]

A

As with Milteer's Title VII claim, the court analyzes his retaliation claim within the

_____

[13]Navarro County argues in reply:

> Plaintiff fails to plead a disability discrimination claim because his complaint contains no specific factual allegations that Defendant took any adverse action against him because of his purported disabilities, or refused him a requested accommodation because of a purported disability. Instead, Plaintiff generally identifies his PTSD and hearing loss issues (neither of which is discussed with any specificity or detail, as noted above), vaguely references issues associated with recovery from an unspecified surgery, and then details his alleged requests to work remotely due to COVID-19 concerns, not because of any issues associated with his alleged disabilities.

D. Reply 4. Because Navarro County has raised these arguments for the first time in its reply brief, and because the court is granting Navarro County's motion on the ground that Milteer has not plausibly alleged that he has a "disability," the court will not consider Navarro County's reply arguments in deciding the instant motion to dismiss. *See Jacobs*, 2006 WL 2728827, at *7. The court expresses no view, however, concerning whether Navarro County will or will not be able to prevail on these arguments at the summary judgment stage or at trial.

[14]Milteer pleads his retaliation claim under Title VII, alleging that Navarro County "retaliated against him for asking to work remotely because of his disability and health issues, including for being at high-risk for COVID-19." Compl. ¶ 6.1. But Title VII does not prohibit discrimination or retaliation on the basis of disability. *See supra* note 9.

context of the familiar *McDonnell Douglas* framework.[15]  To make out a prima facie case of retaliation under the ADA, Milteer must show that (1) he engaged in an activity protected by the ADA, (2) he suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action.  *Lyons v. Katy Indep. Sch. Dist.* 964 F.3d 298, 304 (5th Cir. 2020) (citation omitted).[16]

B

Navarro County moves to dismiss Milteer's retaliation claim on two grounds: first, that his complaint does not contain specific factual allegations establishing that he engaged in any protected activity; and, second, that the complaint fails to specifically plead any causal link between that protected activity and an adverse employment action.

Milteer responds that he participated in a protected activity when he requested reasonable accommodation for his disabilities starting in May 2020 and continuing through November 2020; that Navarro County suspended him and then fired him for his continued requests for reasonable accommodation; that he had never received a verbal or written

_____

[15]As noted above, *see supra* note 5, although the *McDonnell Douglas* standard is an evidentiary framework, not a pleading standard, it is nevertheless helpful to reference that framework when determining whether a plaintiff has plausibly alleged the ultimate elements of his claim.  *See Cicalese*, 924 F.3d at 767.

[16]Milteer must make this same showing for his retaliation claims brought under the Rehabilitation Act and the TCHRA.  *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 473-74 (5th Cir. 2006) (following the lead of Texas courts in relying on analogous federal law to interpret the TCHRA); *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (stating that jurisprudence interpreting either § 504 of the Rehabilitation Act or Title II of the ADA is applicable to both).

warning during the almost eight years he worked with Navarro County; that even if he does not have a disability, as defined by the ADA, his reasonable, good faith belief that he did have a disability and that the statute was violated is sufficient; that he has adequately pleaded causation by alleging that he had no past disciplinary record, Navarro County departed from typical policy and procedure by denying him the ability to work remotely, and the temporal relationship between his complaints and termination demonstrate that the complaints were the reason for his termination; and that he "set forth sufficient facts that if true show he suffered adverse employment actions for his requests for reasonable accommodation and expression of his religious beliefs," P. Br. 23.[17]

Navarro County argues in reply that the complaint does not allege that Milteer ever requested an accommodation based on any "disability," as defined by law, but instead only references unspecified issues associated with recovery from an unspecified surgery and his requests to work remotely due to COVID-19 concerns; that Milteer does not allege that he ever requested an accommodation for his religious beliefs; that Miteer has therefore not adequately pleaded that he engaged in any activity protected by the disability or religious discrimination statutes under which he sues; and that this failure also establishes that Milteer

_____

[17]Milteer has not pleaded a claim for retaliation based on the "expression of his religious beliefs." P. Br. 23. He alleges only that Navarro County "retaliated against him for asking to work remotely because of his disability and health issues, including for being at high-risk for COVID-19." Compl. ¶ 6.1; *see also id.* ¶ 6.2 ("Plaintiff was then retaliated against for simply asking to work remotely like other Navarro County staff and employees were permitted to do. Plaintiff was the only employee retaliated against, and wrongfully terminated.").

has not adequately pleaded any causal connection between protected activity and an alleged adverse employment action.

C

A request for a reasonable accommodation is generally considered a protected activity under both the ADA and the Rehabilitation Act. *Tabatchnik v. Cont'l Airlines*, 262 Fed. Appx. 674, 676 (5th Cir. 2008) ("It is undisputed that making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity."); *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 317 (5th Cir. 2007) (holding that an employee claiming retaliation for requesting reasonable accommodations established a prima facie case of retaliation); *Kurth v. Gonzales*, 472 F.Supp.2d 874, 884 (E.D. Tex. 2007) (holding, with respect to retaliation claim brought under Rehabilitation Act, that plaintiff "engaged in statutorily protected activity when he and his counsel requested that the BOP make reasonable accommodations for what they perceived as [plaintiff's] disability"). And the court will assume *arguendo* that requesting a reasonable accommodation is also an activity protected under the TCHRA. *See, e.g.*, *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 58-59 (Tex. 2021) (rejecting, as "too broad," court of appeals' statement that "an accommodation request does not qualify as opposition to a discriminatory practice under [TCHRA] as a matter of law," and instead "assum[ing] that an accommodation request could, *in some circumstances*, count as opposition to a discriminatory practice."). Milteer contends in his response brief that he "participated in a protected activity when he requested reasonable accommodation for his disabilities starting in May 2020 and continuing through November

2020."  P. Br. 21.

But despite what Milteer argues in his response brief, he has not actually pleaded in his complaint that he requested a reasonable accommodation for any "disability," as that term is defined in the statutes.  Milteer alleges that, after his surgery, he informed Sumpter that his doctor would allow him to return to work on May 25, 2020 and that "[a]s a result, Sumpter then said that he would require his employees to work in the office 2-3 days per week."  Compl. ¶ 5.6.  This allegation does not plausibly allege that Milteer asked for an accommodation for any alleged disability.  Milteer simply "informed Sumpter that he was currently in remission and that he had a military service-connected disability making it difficult for him to hear."  *Id.*

Milteer also alleges that he

> asked for reasonable accommodation that would permit him to work remote like the other employees and staff of Navarro County, especially in light of the COVID-19 pandemic which was spreading rapidly outside as well as within Defendant's place of employment; as well as Plaintiff's hearing disability caused during his time in the military; and due to his recent invasive medical surgery that would require significant recovery.

*Id.* ¶ 5.7; *see also id.* ¶ 5.12 (alleging that Milteer "made specific requests for an accommodation to work remote" in August and September 2000); *id.* ¶ 5.13 (alleging that Milteer "asked for an accommodation and to be permitted to work remotely" in October 2020).  These allegations also do not permit the court to draw the reasonable inference that Milteer asked for an accommodation for any *disability*.  Milteer specifically alleges that he

asked to work remotely *due to the COVID-19 pandemic*, alleging that he "was considered at high-risk in catching COVID-19 because of his age and health," *id.* ¶ 5.8.  As pleaded, however, neither Milteer's age nor his "health" constitutes a disability protected under the ADA or Rehabilitation Act.[18]

Nor has Milteer plausibly alleged that there is a causal connection between his requests to work remotely, which began in May of 2020, and his December 28, 2020 termination.  He does not allege any specific reason for his termination, noting only that he received a letter on December 28, 2020 informing him that Navarro County was terminating his employment and that his employment "is at-will, which allows the County to end the employer-employee relationship without notice and without reason."  Compl. ¶ 5.24.  The fact that Milteer had not had any employment-related issues or verbal or written warnings within the eight years he was employed with Navarro County is insufficient, without more, to support the conclusory allegation that Milteer "was then retaliated against for simply asking to work remotely like other Navarro County staff and employees were permitted to do."  *Id.* ¶ 6.2.

Accordingly, because Milteer has failed to plausibly allege facts in support of the first

---

[18]To the extent that Milteer pleads that he "asked for reasonable accommodation that would permit him to work remote . . . , especially in light of the COVID-19 pandemic . . . *as well as Plaintiff's hearing disability caused during his time in the military*," Compl. ¶ 5.7 (emphasis added), he has not pleaded any facts, beyond this conclusory assertion, that would permit the court to draw the reasonable inference that he requested permission to work remotely to accommodate his alleged "hearing disability" as opposed to, for example, his concern about contracting COVID-19.

and third elements of a prima facie claim for retaliation under the ADA, Rehabilitation Act, or TCHRA, the court grants Navarro County's motion to dismiss these claims.

VI

In his response to Navarro County's motion, Milteer requests leave to amend his complaint to set forth additional facts. The court's usual practice when granting a motion to dismiss is to permit a plaintiff at least one opportunity to replead, unless it is clear that the defects are incurable or the plaintiff advises the court that he is unwilling or unable to amend in a manner that will avoid dismissal. *See In re Am. Airlines, Inc., Privacy Litig*., 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (citation omitted)). Here, Milteer has explicitly requested leave to amend his complaint, and it is not clear that the defects the court has identified are incurable. In fact, this may turn out to be a case in which a plaintiff with at least one plausible claim has simply failed in his first attempt to plead the claim. The court therefore grants Milteer leave to replead. He must file an amended complaint within 28 days of the date this memorandum opinion and order is filed.

\*   \*   \*

For the reasons explained, the court grants Navarro County's motion to dismiss, and it grants Milteer leave to file an amended complaint with 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

May 3, 2022.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 24 -