IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICK MILTEER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:21-CV-2941-D |
| VS. | § | |
| | § | |
| NAVARRO COUNTY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

This is an action by plaintiff Rick Milteer ("Milteer"), a practicing Messianic Jew and disabled veteran, alleging claims against defendant Navarro County, Texas ("Navarro County") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code Ann. § 21.001 *et seq.* (West 2021).[1]   Navarro County moves for summary judgment.  For the reasons explained, the court grants the motion in part, and in part raises *sua sponte* that Navarro County is entitled to summary judgment on Milteer's remaining claims.  The court grants Milteer leave to respond before dismissing the claims on grounds that it is raising *sua sponte*.

---

[1]Milteer also asserted under his fourth cause of action a claim for retaliation under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794.  In *Milteer v. Navarro County, Texas,* ___ F.Supp.3d ___, 2023 W 415154, at *6-7 (N.D. Tex. Jan. 25, 2023) (Fitzwater, J.), the court dismissed Milteer's Rehabilitation Act claim.

I

Milteer, a practicing Messianic Jew and disabled veteran, has been diagnosed with
hearing loss in both ears, cancer, a throat tumor, post traumatic stress disorder ("PTSD"),
hypertension, and diabetes.[2]  On March 11, 2013 Navarro County hired Milteer to fill the
position of Information Technology ("IT") Manager for the Texoma High Intensity Drug
Trafficking Areas ("HIDTA") program.[3]  Milteer's employment offer was approved by the
Texoma HITDA Executive Board.  Under the terms of an Interlocal Agreement, Navarro
County performs administrative functions for the Texoma HITDA "such as, but not limited
to, payroll . . . and other administrative actions that are required as part of the grant" of
program funds.[4]   D. App. 27.  Accordingly, Navarro County paid Milteer's salary and
provided Milteer with yearly W-2 tax forms.  Milteer's direct report during his employment
was Texoma HIDTA Director Lance Sumpter ("Sumpter").

In May 2020 Milteer took "sick" time off of work to recover from throat surgery.
While he was at home on leave, Sumpter contacted him, and Milteer felt forced to share that

---

[2]The court recounts the evidence in the light most favorable to Milteer, as the
summary judgment nonmovant, and draws all reasonable inferences in his favor.  *See, e.g.*,
*Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008)
(Fitzwater, C.J.) (citation omitted).

[3]At the time Milteer was hired, the Texoma HIDTA program was known as the North
Texas HIDTA program.

[4]Milteer contends that a HIDTA is administered by the Office of National Drug
Control Policy, a component of the Executive Office of the President, and is a coalition of
federal, state, local, or tribal law enforcement agencies from a specific geographic area that
has joined together to apply for and receive federal grants to facilitate certain specific drug
control goals.

he had recently undergone surgery, that he was currently in remission, and that he had a military service-connected disability that made it difficult for him to hear. Milteer requested to remain at home and work remotely in light of the COVID-19 pandemic, his various health conditions, and his recent surgery. Sumpter denied the request, informing Milteer that he was required to work in the office 2-3 days per week.

Milteer returned to work, adhered to this directive for several months, and traveled out of town when directed, even though other employees were offered the opportunity to work from home and only sporadically show up at the office. Milteer again requested permission to work remotely in August and September 2020, but these requests were denied. On October 7, 2020 Sumpter informed Milteer that he would be required to work in the office 4 days per week, even though all other Navarro County employees were permitted to continue working from home. When Milteer again asked if he could work remotely, Sumpter denied his request.

In June 2020 Milteer was asked to conduct an audit of all HIDTA FMS as part of an investigation of a national data breach. On October 26, 2020 he met with Julie Wright ("Wright"), the Navarro County Human Resource Coordinator, and Tiffany Richardson, the Navarro County IT Manager, to discuss an internal data breach of personal identifiable information at the Texoma HITDA that he had discovered during his investigation. According to Milteer, the metadata revealed that Sumpter and Accounting Manager Steve Brandt ("Brandt") were the authors of the folder and the last to have access to the data. During the October 26, 2020 meeting, Milteer informed Wright "of the sensitive matters

transpiring in Texoma HIDTA related to [his] lack of accommodation and religious intolerance," and asked her to clarify who his employer was so that he could report employment-related issues.  P. App. 7.  Wright did not know who Milteer's employer was but said she would follow up with him the next day.

On October 28, 2020 Milteer reported the data breach to Sumpter and Deputy Director Keith Raymond Brown ("Brown").  According to Milteer, the combative nature of the meeting triggered his PTSD.  Milteer contends that Sumpter knew that, due to Milteer's PTSD, he became non-responsive when confronted, but that Sumpter used this to imply that Milteer could not answer the questions about the data breach.

Milteer again met with Sumpter and Brown on November 4, 2020 to discuss the data breach and intrusion that he had discovered.  Milteer had been privately fasting and praying, and, as is customary during such a period, had worn his Tallit and Kippah to the meeting. Sumpter immediately questioned Milteer about his appearance and asked Milteer if he was Jewish.  Milteer told him that he was an observant Messianic Jewish believer.  Sumpter then told Milteer to remove his Tallit and Kippah because he thought it was disrespectful for the type of meeting he was conducting.  Milteer declined.

On November 18, 2020 Milteer and his wife met with Wright (the Navarro County Human Resource Coordinator) to report the lack of adequate accommodation, religious intolerance, and retaliation.  Milteer filed a complaint with the Equal Opportunity Employment Commission ("EEOC") on November 23, 2020.

Navarro County terminated Milteer's employment on December 28, 2020.  In the

termination letter Wright stated:

> [t]his letter is to inform you that as of today, December 28, 2020, we are terminating your employment with Navarro County. Your employment is at-will, which allows the County to end the employer-employee relationship without notice and without reason. This decision is based wholly on the recommendation of the Texoma HIDTA Executive Board's unanimous vote to terminate your employment status with Texoma HIDTA. The Executive Board's decision is based on the findings of a thorough investigation of the "allegation of data breach" made by you between the dates of October 21 and November 30, 2020.

*Id.* at 97. Prior to the December 28, 2020 letter, Milteer had never had any employment-related issues or had any verbal or written warnings in his nearly eight years of employment with Navarro County.

After Milteer received his right to sue letter from the EEOC, he filed this lawsuit. In his amended complaint, which is the operative pleading, he alleges the following claims: religious discrimination, in violation of Title VII and the TCHRA; disability discrimination, in violation of the ADA and TCHRA, and retaliation, in violation of the ADA and TCHRA.[5] Navarro County moves for summary judgment on all of these claims. Milteer opposes the motion,[6] which the court is deciding on the briefs.

---

[5]As noted, *see supra* note 1, the court has dismissed Milteer's claim for retaliation under the Rehabilitation Act.

[6]In his summary judgment response brief, Milteer objects to the affidavits of Terri Gillen ("Gillen") and Wright, and objects to the court's consideration of the Memorandum of Agreement Between Texoma HIDTA, Navarro County, and Sumpter. Because, in deciding Navarro County's motion, the court has not relied on any of the evidence to which Milteer objects, it overrules his evidentiary objections as moot.

II

Before turning to the merits, the court addresses defects in the parties' briefing.

Navarro County's motion contains five pages of "undisputed facts." Milteer's response contains a six-page "response to defendant's alleged undisputed facts." The extensive listing of facts in the motion and response, rather than in the pertinent parts of the brief, is inconsistent with the local civil rules governing summary judgment practice.

N.D. Tex. Civ. R. 56.3(a) provides, in relevant part, that "a motion for summary judgment must, in addition to the contents required by Fed. R. Civ. P. 56(a) . . . on the first page, under the heading 'summary,' state concisely the elements of each claim or defense as to which summary judgment is sought." The "summary" requirement of Rule 56.3(a)(1) is intended to give the court a "snapshot" of the motion before it. It therefore requires that, on the first page of a motion, the moving party set out, concisely, "the elements of each claim or defense as to which summary judgment is sought." *Id.*

> This requirement is intended simply to apprise the court and the opposing party why the movant is seeking summary judgment. It can be as simple as stating in a negligence case that there is no evidence of causation, or in a discrimination case of pointing the court to the absence of genuine evidence of intentional discrimination.

*Bowe v. Exide Corp.*, 2001 WL 705881, at *1 (N.D. Tex. June 18, 2001) (Fitzwater, J.) (quoting *Page v. UNUM Life Ins. Co. of Am.*, 1999 WL 1000493 (N.D. Tex. Nov. 3, 1999) (Fitzwater, J.)).

N.D. Tex. Civ. R. 56.4(a) provides, in relevant part, that "a response to a motion for

summary judgment must . . . state in reasonably concise terms why the responding party opposes the motion."

In the present case, the court has had to engage in considerable flipping back and forth between the parties' respective motion or response and their brief in support. As this court has stated previously:

> [b]y limiting the role of the motion and emphasizing the role of the brief, the court is relieved from flipping back and forth between two documents in its efforts to decide the motion. And . . . [w]ith the advent of the 1998 summary judgment local rules, a brief in [opposition to] a motion for summary judgment should look more like an appellate brief, with assertions about the evidence and law set out under an argument heading that states clearly and with particularity why summary judgment is [not] warranted on the basis asserted.

*Bowe*, 2001 WL 705881, at *2 (some alterations in original) (internal quotation marks and citations omitted).

Despite defects in the briefing, the court has determined that these errors do not materially interfere with the decisional process of the court and that undue delay and expense would result if the court directs the parties to re-brief the motions. Accordingly, the court will proceed to the merits of Navarro County's motion, as if the briefing fully complied with the local civil rules governing summary judgment practice.

### III

When a party moves for summary judgment on a claim on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the

nonmovant's claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party does so, the nonmovant must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the nonmovant fails to meet his burden.  *Little*, 37 F.3d at 1076.

IV

The court first addresses Navarro County's contention that it was not Milteer's employer for purposes of liability under Title VII, the ADA, or the TCHRA.

A

Navarro County maintains that it is entitled to summary judgment on all of Milteer's claims because Texoma HIDTA, not Navarro County, was Milteer's employer.  It contends that although it was nominally Milteer's "employer," it was in fact nothing more than an administrator that processed Milteer's payroll and benefits for Texoma HIDTA; that as a person assigned to Texoma HIDTA, Milteer was hired, supervised, directed, evaluated, and terminated solely by the Director and Executive Board of Texoma HIDTA; that Navarro County has no authority to make the hiring decision for employees who will be assigned to

- 8 -

and work at Texoma HIDTA or to supervise, direct the work or activities of, or terminate the employment of any person assigned to and working at Texoma HIDTA; that Navarro County did not make, and had no involvement in or authority over, Texoma HIDTA's decision to terminate Milteer; that Navarro County did not have knowledge of any bona fide religious belief, qualifying disability, request for accommodations for such disability, or protected activity that Milteer engaged in; and that Navarro County only undertook the administrative action necessary to terminate Milteer because Navarro County was required to do so in response to the instructions of the Texoma HIDTA Executive Board.

Milteer responds that Navarro County was his employer, for purposes of his claims under Title VII, the ADA, and the TCHRA, because Navarro County offered him the job; the offer of employment letter stated that "[e]mployment will be as a Navarro County, Texas employee assigned at HIDTA and will be subject to processing by Navarro County," P. App. 13; Navarro County fired him; Navarro County paid his salary, issued his W-2 federal tax form, managed his retirement, and set the terms and conditions of his employment; Navarro County admitted on  numerous occasions that Milteer was an employee of Navarro County; and because the law required that Navarro County be represented on the Texoma HIDTA board, it is disingenuous for Navarro County to contend that it had nothing to do with Milteer's termination.  He argues in the alternative that if Navarro County was not his employer, then Navarro County and Texoma HIDTA acted as a single employer or joint employers.

- 9 -

B

A defendant is not liable under Title VII, the ADA, or the TCHRA absent an employment relationship between the plaintiff and the defendant. *See Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 926 (5th Cir. 2021) (Title VII); *Brennan v. Mercedes Benz USA*, 388 F.3d 133, 135-36 (5th Cir. 2004) (ADA); *Capozzelli v. Allstate Ins. Co.*, 2014 WL 786426, at *2 (E.D. Tex. Feb. 25, 2014) (ADA and TCHRA). In *Burton v. Freescale Semiconductor, Inc*., 798 F.3d 222 (5th Cir. 2015), the Fifth Circuit adopted the "hybrid economic realities/common law control test" to determine the existence of an employment relationship. *Id*. at 227. "The right to control an employee's conduct is the most important component of this test." *Id*. (quoting *Deal v. State Farm Cnty. Mut. Ins. Co. of Tex*., 5 F.3d 117, 119 (5th Cir. 1993)). In examining the "control" component, the court considers "whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule." *Id*. (quoting *Deal*, 5 F.3d at 119). The "economic realities" component "focuse[s] on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id*. (quoting *Deal*, 5 F.3d at 119).

C

A reasonable jury could find that Navarro County was Milteer's employer. Under the "control" component of the hybrid test, a reasonable jury could find, based on the evidence

in the summary judgment record,[7] that Navarro County was the entity that hired and fired Milteer.  *See, e.g.*, P. App. 13 (offer of employment by Navarro County, "[o]n behalf of the North Texas HIDTA," stating "[t]his offer of employment has been approved by the Executive Board, North Texas HIDTA"); *id.* at 97 (termination of employment by Navarro County "based wholly on the recommendation of the Texoma HIDTA Executive Board's unanimous vote").  Under the "economic realities" component, a reasonable jury could find, based on the record evidence, that Navarro County paid Milteer's salary, withheld taxes, and provided benefits.

Additionally, although Navarro County did not supervise Milteer, set his work schedule, or establish the terms and conditions of his employment, it did represent, or at least appeared to represent, on several occasions that it was Milteer's employer.  *See, e.g.*, *id.* at 11 (job posting for IT Manager for North Texas HIDTA, noting "[t]he incumbent *is employed through Navarro County*, the programs fiduciary, and serves at the pleasure of the NT HIDTA Executive Board and Director." (emphasis added)); *id.* at 13 (March 11, 2013 offer letter stating "[e]mployment will be as a Navarro County, Texas employee assigned at HIDTA and will be subject to processing by Navarro County"); *id.* at 18 (January 22, 2015 letter from Brandt stating "Rick Milteer is a full time employee for Navarro County/Texoma

---

[7]"When this court denies rather than grants summary judgment [with respect to a particular issue], it typically does not set out in detail the evidence that creates a genuine issue of material fact."  *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

HITDA"); *id.* at 96 (October 30, 2020 email from Wright to Milteer stating, "[y]our employment status with Navarro County is still active.  You can not be terminated by a non-County employee."); *id.* at 97 (termination letter from Wright stating, "as of today, December 28, 2020, we are terminating your employment with Navarro County.  Your employment is at-will, which allows the County to end the employer-employee relationship without notice and without reason.").

In the light of Navarro County's representations and the other components of the hybrid test that are supported by the summary judgment evidence,[8] the court holds that a reasonable jury could find that Navarro County was Milteer's employer for purposes of his claims under Title VII, the ADA, and the TCHRA.

## V

Having concluded that a reasonable jury could find that Navarro County was Milteer's employer, the court next considers whether Milteer has created a genuine issue of material fact on the essential elements of his claim for religious discrimination under Title VII.

---

[8]In its reply, Navarro County argues that the most important consideration in determining who is an employer is the right to control an employee's conduct and that "Texoma HIDTA alone possesses every power deemed important to the determination of who has the right to control Plaintiff's activities." D. Reply 11.  Although the court does not disagree that the Fifth Circuit has held that "[t]he right to control an employee's conduct is the *most important* component of [the hybrid] test," *Burton*, 798 F.3d at 227 (emphasis added) (quoting *Deal*, 5 F.3d at 119), the Fifth Circuit has not held that this factor is controlling.

A

Under Title VII,[9] it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion[.]" 42 U.S.C. § 2000e-2.  When a plaintiff does not present direct evidence of discrimination, the court analyzes the claim using the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

As modified, the *McDonnell Douglas* framework consists of three stages.  First, Milteer must establish a prima facie case of discrimination, which "creates a presumption that [Navarro County] unlawfully discriminated against him."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  To establish a prima facie case of religious discrimination, Milteer must show that (1)  he held a bona fide religious belief, (2) his belief conflicted with a requirement of his employment, (3) his employer was informed of his belief, and (4) he suffered an adverse employment action for failing to comply with the conflicting employment requirement.  *See, e.g.*, *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013) (citing *Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 499 n.9 (5th Cir. 2001)).[10]

---

[9]"[T]he law governing claims under the TCHRA and Title VII is identical." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999) (citation omitted).

[10]These are the required elements for a religious discrimination claim based on the allegation that an employer failed to accommodate its employee's religious belief.  Milteer appears to agree that he must satisfy these elements to prevail on his religious discrimination claims.  *See* P. Br. (ECF No. 54-2) at 19.

Second, if Milteer establishes a prima facie case, the burden shifts to Navarro County to articulate a legitimate, nondiscriminatory reason for the employment action taken against him. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).  Navarro County's burden is one of production, not of proof, and involves no credibility assessments. *See, e.g.*, *West v. Nabors Drilling USA, Inc*., 330 F.3d 379, 385 (5th Cir. 2003).

Third, if Navarro County meets its production burden, Milteer may prove intentional discrimination by proceeding under one of two alternatives: the pretext alternative or the mixed-motives alternative. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (age discrimination case).  Milteer does not rely in his response brief on the mixed-motives alternative. *See* P. Br.  (ECF No. 54-2) at 30 (contending that the alleged reason for Milteer's termination is merely a pretext for discrimination and retaliation).  Under the pretext alternative, Milteer must "offer sufficient evidence to create a genuine issue of material fact . . . that [Navarro County's] reason is not true, but is instead a pretext for discrimination[.]" *Rachid*, 376 F.3d at 312 (citation and internal quotation marks omitted).

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143 (2000) (alteration in original) (quoting *Burdine*, 450 U.S. at 253).

- 14 -

B

Because the court holds below that Milteer has failed to meet his burden to create a genuine issue of material fact on the issue of pretext, it will assume *arguendo* that Milteer has established a prima facie case of religious discrimination under Title VII and the TCHRA. *See, e.g.*, *Barnard v. L-3 Commc'ns Integrated Sys. L.P.*, 2017 WL 3726764, at *8 (N.D. Tex. Aug. 30, 2017) (Fitzwater, J.) (assuming *arguendo* that plaintiff had established prima facie case where plaintiff failed to meet her burden to create genuine issue of material fact on issue of pretext).[11]

C

The court now turns to the second stage and determines whether Navarro County has met its burden of production.

The court concludes that Navarro County has met this burden because it has produced evidence of a legitimate, nondiscriminatory reason for terminating Milteer's employment: it was instructed to do by the Texoma HIDTA Executive Board, which had unanimously voted to terminate Milteer's employment based on the belief that he made false allegations regarding the purported data breach and that he had lied during a formal investigation into

---

[11]Although the court is assuming that Milteer has established a prima facie case of religious discrimination, it appears to be quite unlikely on the present record that he can satisfy the second or fourth element. Milteer contends that Sumpter asked him to remove his Tallit and Kippah during the November 4, 2020 meeting, but he neither argues nor adduces any evidence that his religious beliefs conflicted with an employment requirement of Navarro County or that he was terminated for failing to comply with a conflicting employment requirement of Navarro County.

the alleged breach, and on the basis that he was no longer considered trustworthy by his supervisors at Texoma HIDTA.[12]

## D

Because Navarro County has met its burden of production, the burden shifts back to Milteer to present evidence that would enable a reasonable jury to find that Navarro County's reason is pretextual. The court raises *sua sponte*[13] that Navarro County is entitled to summary judgment on Milteer's Title VII and TCHRA religious discrimination claim because Milteer has not met this burden.

_____

[12]Milteer contends in his response that since neither Wright nor Gillen has personal knowledge of the investigation into Milteer's data breach complaint or personal knowledge of the purported investigative report attached to Wright's affidavit, Navarro County "has not met its burden of providing a legitimate reason for Milteer's termination." P. Br. (ECF No. 54-2) at 30. The court disagrees. As Human Resources Coordinator for Navarro County and the author of Milteer's termination letter, Wright would certainly be competent to provide testimony as to why *Navarro County* terminated Milteer's employment. In any event, Navarro County's burden at the second stage of the *McDonnell Douglas* analysis is one of production, not of proof. *See, e.g.*, *West*, 330 F.3d at 385. Navarro County's evidence is sufficient to meet this standard.

[13]Navarro County does not clearly move for summary judgment based on the third step: the ultimate issue of discrimination. Instead, Navarro County confines its arguments to whether Milteer can establish a prima facie case. *See* D. Reply 17 (contending that Navarro County is entitled to summary judgment because Milteer has "failed to raise genuine issues of material fact on the prima facie case for each of his causes of action in response to Defendant's motion"). "It is error to grant summary judgment on a ground not raised." *Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) (citing *John Deere Co. v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987)). The court must therefore raise this ground *sua sponte*, which it can do, provided it affords Milteer notice and a fair opportunity to respond. *See, e.g.*, *Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *9 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (citing *Arkwright-Bos. Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991)).

This is Milteer's entire argument regarding pretext:

> Finally, the alleged reason for Milteer's termination, the false reporting of a data breach, is merely a pretext for discrimination and retaliation. Milteer's discovery and reporting of the internal data breach was part of his job. Milteer did not lie about the breach and his inability to respond to Sumpter's badgering at a meeting was due to his disabilities and not because he could not answer Sumpter's questions or allegations. [Sumpter]'s spin on the data breach and alleged investigation of the data breach is nothing more than pretext for discrimination and retaliation. Accordingly, there are genuine issues of material fact as to whether the pro-offered reason for Milteer's termination is nothing more than pre-text for the Defendant's discrimination.

P. Br. (ECF No. 54-2) at 30 (citations omitted). The only evidence that Milteer cites in support of this argument is his own declaration, in which he attempts to justify his reporting of the data breach and his conduct during the October 28, 2020 meeting with Sumpter. Milteer offers no proof to support his unsubstantiated and conclusory belief that Sumpter's "spin" on the data breach and alleged investigation "is nothing more than pretext for discrimination and retaliation." *See, e.g., Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("'[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment." (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)). And even if he had, a reasonable jury could not find, based on the summary judgment evidence, that *Navarro County's* proffered reason for Milteer's termination—i.e., that it was instructed to do so by the Texoma HIDTA Executive Board—was not the real reason but was instead pretext for intentional religious discrimination by Navarro County.

- 17 -

Accordingly, the court raises *sua sponte* that Navarro County is entitled to summary judgment dismissing Milteer's religious discrimination claim under Title VII and the TCHRA.

## VI

The court next considers Milteer's claim under the ADA and TCHRA for failure to accommodate.

### A

The ADA prohibits discrimination in employment against a qualified individual on the basis of disability. *See* 42 U.S.C. § 12112(a). Under the ADA, to "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id*. § 12112(b)(5)(A). Similarly, the TCHRA provides that it is unlawful for an employer "to fail or refuse to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability . . . unless [the employer] demonstrates that the accommodation would impose an undue hardship on the operation of the business." Tex. Lab. Code Ann. § 21.128(a).

To prevail on an ADA failure-to-accommodate claim,[14] a plaintiff must show that:

_____

[14]In the amended complaint, Milteer only alleges claims for failure to accommodate under the ADA and TCHRA. *See* Am. Compl. ¶¶ 51, 57. He does not allege that he was

"(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (footnote and internal quotation marks omitted). Under the TCHRA, to establish a claim "based on an employer's failure to provide a reasonable accommodation, the plaintiff must show: (1) [he] is an individual with a disability; (2) the employer had notice of the disability; (3) with reasonable accommodations [he] could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Tex. Dep't of State Health Servs. v. Rockwood*, 468 S.W.3d 147, 154-55 (Tex. App. 2015, no pet.).

B

Navarro County moves for summary judgment on Milteer's ADA and TCHRA failure-to-accommodate claim on the ground, *inter alia*, that it did not know that Milteer had a qualifying disability or that he had requested accommodation for the disability. In response, Milteer adduces evidence that he informed Sumpter of his disabilities and asked for a reasonable accommodation to work remotely, like other employees.

A plaintiff asserting a failure to accommodate claim must "show that the employer knew of such employee's substantial physical or mental limitation." *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 163 (5th Cir. 1996); *see also Seaman v. CSPH, Inc.*, 179 F.3d 297, 300

---

terminated or otherwise subjected to discrimination because of his disabilities.

(5th Cir. 1999) ("Because the ADA requires employers to accommodate the limitations arising from a disability, and not the disability itself, an employee seeking to assert a disability discrimination claim must produce evidence that the employer knew not only of the employee's disability, but also of the physical or mental limitations resulting therefrom." (footnotes omitted)).  Milteer has failed to produce any evidence, or even argue, that he informed Navarro County of his disabilities or that he requested an accommodation from Navarro County.  It is Navarro County who he alleges was his employer and against whom he brings this claim.  To the extent that he relies on evidence that he informed Sumpter of his disabilities and asked Sumpter for a reasonable accommodation, Milteer neither argues nor has adduced evidence that Sumpter, the Director of Texoma HIDTA, was an employee or agent of Navarro County or that Sumpter's knowledge can be imputed to Navarro County.

Accordingly, because Milteer has failed to satisfy the second element of a prima facie case for failure to accommodate, the court grants Navarro County's motion for summary judgment dismissing this claim.

VII

The court now turns to Milteer's claim for retaliation under the ADA and TCHRA. This claim is based on the contention that Milteer was suspended and terminated in retaliation for his requests for reasonable accommodation and his expression of his religious beliefs.

- 20 -

A

Because Milteer relies on circumstantial evidence to support his retaliation claim, he must proceed under the same *McDonnell Douglas* burden shifting framework.  Milteer must first demonstrate a prima facie case of retaliation by showing that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action.  *See Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020) (ADA); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 782 (Tex. 2018) (TCHRA).  As to the third element, the requirement that a plaintiff show at the prima facie case stage a "causal link" between a protected activity and an adverse employment action is "much less stringent" than the "but for" causation that the trier of fact must find.  *See Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *see also Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing the prima facie case burden as "minimal").

If Milteer establishes a prima facie case, the burden shifts to Navarro County to articulate a legitimate, nonretaliatory reason for the action taken.  *See St. Mary's Honor Ctr.*, 509 U.S. at 506-07.  This burden is one of production, not of proof.  *West*, 330 F.3d at 385.

If Navarro County meets its production burden, the burden shifts back to Milteer to produce evidence that retaliation for his protected conduct, rather than Navarro County's proffered legitimate nonretaliatory reason, was the "but-for cause" of the adverse employment action.  *See, e.g.*, *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 488-89 (5th

Cir. 2004) (holding that "but for" standard applied to retaliation claim under TCHRA); *Seaman*, 179 F.3d at 301 ("Ultimately, the employee [alleging ADA retaliation claim] must show that 'but for' the protected activity, the adverse employment action would not have occurred."). "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Feist*, 730 F.3d at 454 (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)).

B

The court will assume *arguendo* that Milteer has established a prima facie case of retaliation. Additionally, for the reasons explained above, the court holds that Navarro County has produced evidence of a legitimate, nonretaliatory reason for terminating Milteer's employment. Therefore, the court focuses its analysis on the causation prong of Milteer's retaliation claim.

C

To establish a fact issue concerning pretext, Milteer relies on the same grounds that he urges in support of his discrimination claims. *See* P. Br. (ECF No. 54-2) at 30 ("[Sumpter]'s spin on the data breach and alleged investigation of the data breach is nothing more than pretext for discrimination and retaliation."). The court therefore concludes, for the reasons already explained, that Milteer has failed to raise a genuine issue of fact based on this contention.

Milteer also relies on evidence of the "lack of other disciplinary actions and the

temporal relationship between Milteer's complaints and his discharge." *Id*. at 27.  He contends that, before he was "suspended [in October 2020] for no stated reason," *id*. at 28, he had "never received a verbal or written warning ever within the almost eight years he worked with [Navarro County]," *id*. at 27; that he engaged in protected activity when he requested reasonable accommodation for his disabilities starting in May 2020 and continuing through November 2020, when he asked to wear a Tallit and Kippah at the November 4, 2020 meeting with Sumpter, and when he filed an EEOC complaint on November 23, 2020; and that "his termination occurred less than two months later," *id*. at 28.

The court raises *sua sponte*[15] that Milteer has not demonstrated a genuine issue of material fact with regard to but-for causation.  "Close timing between an employee's protected activity and an adverse action against him" may establish causation. *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)).  But "once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." *Id*. (quoting *Swanson*, 110 F.3d at 1188).  In this case, both the adverse action and the timing[16] are explained by the fortuity of the nature of Navarro County's being notified that

---

[15]*See supra* note 13.

[16]The court assumes *arguendo* that the temporal proximity between Milteer's May 20, 2020 and October 7, 2020 requests to work remotely and his November 4, 2020 request to wear his Tallit and Kippah and his December 28, 2020 termination is "very close." *See Bush v. Johnson*, 2015 WL 4522914, at *10 (N.D. Tex. July 27, 2015) (Fitzwater, J.) (explaining

the Texoma HIDTA Executive Board had unanimously voted to terminate Milteer's employment and when it received that notification—i.e., at some point between November 30[17] and December 28, 2020. In other words, the severity and close timing of the adverse action that took place on December 28, 2020 are directly related to the fact that Navarro County received notice of the Texoma HIDTA Executive Board's recommendation of termination, which happened to have occurred within months of Milteer's engaging in protected activity. A reasonable jury could only find that the severity and close timing of the adverse action are the result of the Texoma HIDTA Executive Board's recommendation and when Navarro County received it.[18]

The court concludes that Milteer has failed to introduce sufficient evidence of pretext to present a genuine issue of material fact on the causation element of his retaliation claim. Accordingly, the court raises *sua sponte* that Navarro County is entitled to summary judgment on this basis dismissing Milteer's claim for retaliation under the ADA and

---

that for close timing between an employee's protected activity and an adverse action to provide the required "causal connection," "[t]he temporal proximity . . . must be very close." (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001))).

[17]The December 28, 2020 termination letter states that "[t]he Executive Board's decision is based on the findings of a thorough investigation of the 'allegation of data breach' made by you between the dates of October 21 and November 30, 2020." P. App. 97. Milteer does not contend that the HIDTA Executive Board notified Navarro County of its unanimous vote to terminate his employment prior to November 30, 2020.

[18]Moreover, Milteer maintains that he was suspended and then terminated because "Sumpter did not want to be exposed for the data breach or his treatment of Milteer." P. Br. (ECF No. 54-2) at 23. If this was the real reason underlying Milteer's termination, it casts doubt on whether retaliation for engaging in protected activity was the "but for" cause.

TCHRA.

VIII

The court intends to grant summary judgment in part on grounds that it has raised *sua sponte*. Accordingly, Milteer is entitled to reasonable notice and an opportunity to respond. Within 21 days of the date this memorandum opinion and order is filed, Milteer may file a response brief and evidence appendix addressing why the court should not grant summary judgment on grounds that it has raised *sua sponte*. After considering this response, the court will either dismiss the claims or invite Navarro County to file a reply brief.

* * *

For the reasons explained, the court grants in part Navarro County's motion for summary judgment and in part raises *sua sponte* that Navarro County is entitled to summary judgment on Milteer's remaining claims.

**SO ORDERED**.

May 19, 2023.

SIDNEY A. FITZWATER
SENIOR JUDGE